UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| DONALD MCNAMEE,<br><br>              Plaintiff,<br>   vs.<br><br>FREEMAN DECORATING SERVICES, INC.,<br><br>              Defendant. | Case No.: 2:10-CV-01294-GMN-PAL<br><br>**ORDER** |

Pending before the Court is Defendant Freeman Decorating Service, Inc.'s Motion for Summary Judgment (ECF No. 26). Plaintiff Donald McNamee has filed a Response (ECF No. 31), and Defendant has filed a Reply (ECF No. 32).

**I. BACKGROUND**

In 1997, Plaintiff suffered a serious workplace injury in the course of his employment with Freeman Decorating Company, the predecessor entity of Defendant.[1] Plaintiff was compensated for his injury pursuant to the terms of the Nevada Industrial Insurance Act, codified in Chapters 616A through 616D.[2] In 2009, Plaintiff sought employment with Defendant as a forklift operator, in the capacity of a casual laborer through Local 631 of the International Brotherhood of Teamsters ("Local 631"). Defendant did not hire Plaintiff at this time. By letter dated December 2, 2009, Defendant told Local 631 that "Don McNamee may not work for Freeman as a Teamster in that he has not provided a suitable medical release to meet the physical requirements of the job."

---

[1] The parties do not dispute that Defendant fully succeeded Freeman Decorating Company in all employment and contractual obligations.

[2] "Chapters 616A to 616D, inclusive, of NRS shall be known as the Nevada Industrial Insurance Act." NRS 616A.005.

In April 2010, Plaintiff filed his Complaint (ECF No. 1-2) in state court, and Defendant subsequently removed the case to federal court in August 2010. (ECF No. 1.) Plaintiff's Complaint lists three claims for relief, alleging that Defendants: (1) violated the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 *et seq.* (1990)[3]; (2) violated Nevada Revised Statutes 613.330; and (3) retaliated against Plaintiff in violation of the Nevada Industrial Insurance Act, codified in Chapters 616A through 616D of Nevada Revised Statutes.

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

---

[3] In its motion, Defendant refers to Plaintiff's disability discrimination claim as alleged under the Americans with Disabilities Act Amendments Act of 2008 (ADAAA). (Compl., 1:28, 2:23-27.)  The ADAAA, Pub. L. No. 110-325, 122 Stat. 3553 (2008), amended the Americans with Disabilities Act of 1990 (ADA), and became effective as of January 1, 2009.  Although the ADAAA amendments included sections of the ADA discussed by Plaintiff, the Court will refer to Plaintiff's claims as brought under the ADA for the sake of clarity and consistency.

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

### III. DISCUSSION

**A. Retaliation, Nevada Industrial Insurance Act, NRS Chs. 616A – 616D**

Because Defendant's motion and Plaintiff's Response both begin by addressing Plaintiff's retaliation claim, and Plaintiff states that "[t]he heart and soul of this case is Mr. McNamee's third claim for relief," the Court will also begin with Plaintiff's third claim alleging retaliation. (MSJ, 10:1; Pl's Resp. to MSJ, 16:27.)

Plaintiff alleges that "Defendant disparately treated [him] by failing and refusing to hire him for an available position for which he was qualified, in direct retaliation for [his] having successfully sought compensation for a prior compensable work-related injury." (Compl., 4:¶30.) Specifically, Plaintiff alleges that "[i]n failing and refusing to

1  hire [him] as a forklift operator notwithstanding his qualifications for the position, [Lind]

2  stated that Defendant would not hire [him] because [he] 'cost Freeman a lot of money,'

3  specifically referencing [his] prior workers' compensation claim." (Compl., 4:¶29.)

4  In its motion, Defendant argues that Plaintiff's third claim, alleging a retaliatory

5  refusal to hire, is not a recognized cause of action in Nevada.[4] (MSJ, 2:13-14, 10:2-18.)

6  Defendant is correct, and Plaintiff provides no statute, case law or argument to the

7  contrary.  Plaintiff does not even address this argument in his Response.  Instead,

8  Plaintiff briefly restates Nevada law relating to retaliatory firing, correctly citing *Hansen*

9  *v. Harrah's*, 675 P.2d 394, 396-97 (Nev. 1984) (per curiam) for the proposition that "[i]t

10  is a violation of Nevada law for an employer to fire an employee in retaliation for making

11  a claim for workers' compensation benefits." (Pl.'s Resp. to MSJ, 17:3-5, 3-20.)  Plaintiff

12  then skips over the threshold issue raised by Defendant to argue that *federal law* provides

13  analogous authority for his claim that Defendant violated Nevada law by refusing to re-

14  hire him in retaliation for his previous workers' compensation claim. (Pl.'s Resp. to MSJ,

15  17:3-23.)  Plaintiff begins this argument with the statement that "the Nevada Supreme

16  Court has not yet stated definitively how a plaintiff must prove unlawful retaliation in

17  response to filing a workers' compensation claim." (Pl.'s Resp. to MSJ, 17:21-22.)  This

18  argument fails, however, because federal law is not a basis upon which Defendant can be

---

[4] Defendant addresses Plaintiff's claims in relation to the Nevada Supreme Court's holding regarding retaliatory discharge in *Hansen v. Harrah's*, 675 P.2d 394 (Nev. 1984) (per curiam). (MSJ, 10:7-9.)  In *Hansen*, the Nevada Supreme Court "elect[ed] to support the established public policy of this state concerning injured workmen and adopt[ed] the narrow exception to the at-will employment rule recognizing that retaliatory discharge by an employer stemming from the filing of a workmen's compensation claim by an injured employee is actionable in tort." 675 P.2d 397.  It held that retaliatory discharging an employee for filing workers' compensation claims justified by work-related injuries "was repugnant to and violative of Nevada's strong public policy in favor of protecting and providing for injured workers." *Martin v. Sears, Roebuck and Co.*, 899 P.2d 551, 555 (Nev. 1995) (construing and citing *Hansen*, 675 P.2d at 396).

found in violation of Nevada law for this claim. Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law as to Plaintiff's retaliation claim.

**B. Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12101** *et seq.*

**1. Legal Standard**

"The Americans with Disabilities Act of 1990 (ADA), 104 Stat. 327, as amended, 42 U.S.C. § 12101 *et seq.*, makes it unlawful for an employer, with respect to hiring, to 'discriminate against a qualified individual with a disability because of the disability of such individual.' § 12112(a)." *Raytheon Co. v. Hernandez*, 540 U.S. 44, 46 (2003). The ADA defines "discriminate against a qualified individual on the basis of disability" to include "denying employment opportunities to a job applicant or employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12112(b)(5)(B). "Reasonable accommodation" may include "job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities." 42 U.S.C. § 12111(9)(B). "To determine the appropriate reasonable accommodation it may be necessary for the covered entity to initiate an informal, interactive process with the individual with a disability in need of the accommodation." 29 C.F.R. § 1630.2(o)(3).

The statute also defines several terms, including "qualified individual" and "disability." A "disability" under the statute includes three categories: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an

impairment." 42 U.S.C. § 12102(2). Under the third category of disability, an individual must establish that he has been subjected to discrimination "because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity." 42 U.S.C. § 12102(3). However, this impairment cannot be "transitory and minor." *Id*.

A "qualified individual" under the statute can "perform the essential functions of the employment position that such individual holds or desires," "with or without reasonable accommodation." 42 U.S.C. § 12111(8). The statute clarifies that "consideration shall be given to the employer's judgment as to what functions of a job are essential, and if an employer has prepared a written description before advertising or interviewing applicants for the job, this description shall be considered evidence of the essential functions of the job." *Id*.

**2. Analysis**

In his Complaint, Plaintiff alleges that on December 2, 2009, Defendant failed to hire him for the position of forklift operator in violation of the ADA, specifically 42 U.S.C. § 12112. Plaintiff alleges that Defendant violated this statute because it unlawfully discriminated against him in "failing and refusing to hire him for an available position for which he was qualified and for which he could have performed the essential functions either with or without a reasonable accommodation." (Compl., 3:¶17.) Plaintiff alleges that at that time he had a physical or mental impairment that substantially limited one or more major life activities, in that his impairment negatively affected his ability to lift objects, that he had a record of such impairment, and that he was regarded by Defendant as having such impairment. (Compl., 2-3:¶14.) Plaintiff alleges that Defendant was an employer as defined by the ADA under 42 U.S.C. § 12111(4). (Compl., 3:¶15.)

Specifically, Plaintiff alleges that at that time: (1) he was a qualified individual with a disability under the ADA because the impairment that inhibited his lifting ability was a recognized disability under the ADA, (2) that he was fully qualified for the position of forklift operator, (3) that he could perform the essential functions with or without a reasonable accommodation, and (4) that notwithstanding his impairment, Defendant failed to engage in an interactive process in order to determine his capabilities and appropriate job duties.

In its motion, Defendant argues that Plaintiff is not "disabled" within the meaning of the ADA, that he is not a "qualified individual with a disability," that he was not "regarded as" disabled within the meaning of the ADA, that Defendant did not fail to accommodate or engage in an interactive process, and that Plaintiff cannot show pretext. (MSJ, 14-23.)

In responding to a summary judgment motion, a plaintiff may produce direct or circumstantial evidence or may invoke the three-step burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  In the first step, the plaintiff must establish a prima facie case of discrimination or retaliation. *McDonnell Douglas*, 411 U.S. at 802.  If the plaintiff succeeds at this first step, the burden then "shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its allegedly discriminatory conduct." *Vasquez v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003).  At the third step, if the employer articulates a legitimate reason, "the presumption of discrimination drops out of the picture, and the plaintiff may defeat summary judgment by satisfying the usual standard of proof required in civil cases under Fed. R. Civ. P. 56(c)." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (internal quotations omitted).

In order to state a claim under the ADA, Plaintiff must first demonstrate that he is disabled within the meaning of the ADA. *Thompson v. Holy Family Hospital*, 121 F.3d 537, 539 (9th Cir. 1997). In his Response, Plaintiff alleges that he meets this definition and cites the Work Evaluation prepared by R.W. Kudrewicz, M.D. on June 15, 2009 (Ex. 8 to Pl.'s Resp. to MSJ). Plaintiff offers this Evaluation to show that he suffers from an impairment that substantially limits one or more major life activities. Under the prima facie standard, Dr. Kudrewicz's Evaluation is sufficient to establish that Plaintiff suffered from impairment at the time Defendant did not re-hire him.

The next question is whether Plaintiff demonstrates that he falls under one or more of the three categories of disability – actual disability, "record of" disability, or "regarded as" disabled. In his Complaint, Plaintiff alleged all three. In his Response, Plaintiff presents the Evaluation of Dr. Kudrewicz to support the "actual disability" category and the "record of" disability categories. The Court finds that this is sufficient to satisfy the prima facie standard for each of these two categories.

Finally, at Plaintiff's deposition he alleged that Defendant's executives made incriminating statements as explanation for Defendant's refusal to rehire Plaintiff, including, "It's Freeman's policy not to take people back after they've gone through a workman's comp thing like you" and "You cost Freeman a lot of money." The Court therefore finds that these allegations are sufficient to satisfy the prima facie standard for the "regarded as" category. (*See* Pl.'s Dep., May 25, 2011, Ex. 1 to Pl.'s Resp. to MSJ.)

Plaintiff must also demonstrate that he was a qualified individual within the meaning of the ADA. Plaintiff alleges that Defendant sent him for a functional capability evaluation when he sought re-employment, for which he was rated ninety-two percent. (Compl., 2:¶11.) In his Response, Plaintiff alleges that because of this rating he could perform the essential functions of the forklift operator position with or without reasonable

1  accommodation. Plaintiff alleges that Defendant's General Manager, Allen Lind told
2  him, "You lied to me. You said you were 100 percent." (Compl., 2:¶12.) Plaintiff
3  contends that the forklift operator position did not require one-hundred percent, but
4  Defendant argues that the job description for a Teamster specifically requires several job
5  requirements that Plaintiff could not meet. (*See* Functional Capacity Evaluation, Ex. 2 to
6  Feliciano Decl., ECF No. 26-2.) These requirements include the ability to walk on
7  concrete continuously and lift, carry, push, and pull heavy objects. (Job Analysis, Ex. 1 to
8  Feliciano Decl., ECF No. 26-2.) Plaintiff argues that these requirements for a Teamster
9  are overbroad and exceed the actual requirements of a forklift operator. Giving due
10 consideration to the Defendant's judgment as an employer as to what functions of the job
11 are essential, and to the fact that Defendant had prepared a written description of the
12 Teamster position before advertising or interviewing applicants for the job, this
13 description shall be considered evidence of the essential functions of the job. Even with
14 this consideration, Plaintiff has presented enough evidence that he was a qualified
15 individual to satisfy the prima facie standard.

16 Since the Court finds that Plaintiff has established a prima facie case of
17 discrimination, the Court must then consider whether Defendant has articulated a
18 legitimate reason for its allegedly discriminatory conduct. Defendant's burden at this
19 stage is to show that its reason for not hiring Defendant, i.e., that Plaintiff was not
20 qualified for the Teamsters position as shown by the functional capacity report, was
21 legitimate and nondiscriminatory. In its December 2, 2009, letter to Local 631, it said
22 that "Don McNamee may not work for Freeman as a Teamster in that he has not provided
23 a suitable medical release to meet the physical requirements of the job." The Court finds
24 that Defendant has articulated and shown evidence of this legitimate non-discriminatory
25 reason, and that Defendant has therefore met its burden under this second step.

Finally, the Court assesses whether the evidence shows a lack of genuine dispute as to all material facts under the usual Rule 56 standard. As discussed above, the parties have challenged the material facts at every level of this action, including: what the essential functions of the job were, whether Defendant was a "qualified individual," whether Defendant's stated reasons for not hiring Plaintiff were pretextual, and whether Defendant was impaired as defined by the statute. As the moving party, and because Plaintiff bears the burden of proof at trial, Defendant must present evidence to negate an essential element of the Plaintiff's case, or demonstrate that Plaintiff failed to make a showing sufficient to establish an element essential to his case. The Court finds that Defendant has not met this burden, and that these disputes are genuine and relate to material facts. Accordingly, the Court will deny summary judgment as to Plaintiff's ADA disability claim.

**C. Nevada Revised Statutes 613.330**

Under Nevada law, it is unlawful for an employer to fail or refuse to hire a person because of his disability. NRS 613.330(1)(a). Plaintiff alleges that "Defendant violated NRS 613.330 because it unlawfully discriminated against [him] in failing and refusing to hire him for an available position for which he was qualified and for which he could have performed the essential functions either with or without a reasonable accommodation" and "because it subjected [him] to disparate treatment because he was a qualified individual with a disability." (Compl., 4:¶24-25.)

Claims for unlawful discrimination under NRS 613.330 are analyzed under the same principles applied to similar Title VII claims. *See Apeceche v. White Pine Co.*, 615 P.2d 975, 977-78 (Nev. 1980) (comparing NRS 613.330 to section 703(a)(1) of Title VII of the Civil Rights Act of 1964 and analyzing NRS 613.330 according to federal precedent). Accordingly, the Court analyzes Plaintiff's second claim as it analyzed his

first claim. As discussed above, the Court finds that there is a triable issue of material fact as to Plaintiff's disability claim.

However, Defendant also argues that Plaintiff's NRS 613.330 disability discrimination claim fails because he has not properly exhausted administrative remedies with the Nevada Equal Rights Commission (NERC). (MSJ, 23:25-26.) Defendant is correct. In order to pursue this claim, Plaintiff must have filed a timely charge of discrimination with NERC. *See Palmer v. State of Nevada*, 787 P.2d 802, 804 (1990) (restating the general "rule that exhaustion of remedies is required by NRS 613.420 prior to filing an employment discrimination action in court"). Plaintiff has presented no evidence that he did so and does not address this argument in his Response. Accordingly, the Court finds that Defendant is entitled to summary judgment as a matter of law as to Plaintiff's second claim.

### IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Motion for Summary Judgment (ECF No. 26) is **GRANTED in part** and **DENIED in part**. Plaintiff's second and third claims for disability discrimination and retaliation under Nevada law are dismissed, and Defendant's motion is granted as to these claims. Defendant's motion is denied as to Plaintiff's first claim for disability discrimination under the ADA.

DATED this 4th day of April, 2012.

_____
Gloria M. Navarro
United States District Judge